The PEOPLE of the State of Colorado, Complainant,

v.

Diane HENSLEY–MARTIN, Attorney–Respondent.

No. 88SA467.

Supreme Court of Colorado, En Banc.

July 16, 1990.

As Corrected July 23, 1990.

Linda Donnelly, Disciplinary Counsel, Denver, for complainant.

Eugene Deikman, P.C., Eugene Deikman, Denver, for attorney-respondent.

PER CURIAM.

On May 29, 1987, a complaint was filed with the Grievance Committee (the Com-

mittee) against the respondent, Diane Hensley–Martin, alleging two counts of professional misconduct. On December 18, 1987, a second complaint was filed against the respondent alleging three counts of professional misconduct. The two matters were consolidated, and an initial hearing was conducted on July 27, 1988. At the conclusion of that hearing the hearing board recommended disbarment of the respondent, and a hearing panel approved that recommendation.

The respondent subsequently was granted a new trial, and a second hearing was conducted on December 12, 1989. At the conclusion of that hearing the hearing board recommended that the respondent be suspended from the practice of law for a period of two years. The hearing panel unanimously adopted that recommendation. We adopt the hearing panel's recommendation.

## I

The respondent was admitted to the Bar of this Court on May 22, 1978, and accordingly is subject to the jurisdiction of this Court and the Committee. C.R.C.P. 241.-1(b). In 1984, the Committee sent a letter to the respondent admonishing her for professional misconduct.

## II

### A

In May 1985, the respondent agreed to represent Clayton B. Pierce and his former partner, D. Richard Nelson, in a civil action filed against them by Adcom Corporation. The respondent advised Pierce that she had obtained an extension of time from Adcom's attorney to file an answer and counterclaim; however, that representation was not true. The trial court ultimately permitted the respondent to file an answer and counterclaim out of time and denied a motion for default judgment filed by Adcom.

Adcom filed an answer to the counterclaim. However, the respondent advised Pierce that no answer to the counterclaim had been filed and that Adcom probably would not pursue the action. When Pierce and Nelson discovered that a counterclaim had been filed, they retained new counsel. The respondent failed to respond to telephone messages and correspondence initiated by that attorney and delayed transmitting the case file to him.

The respondent also represented Pierce and Nelson in a bankruptcy proceeding they filed in 1985. The respondent at one point requested Pierce to deliver a particular document to her. She represented that she needed the document prior to a scheduled meeting with a Small Business Administration representative. Pierce complied, but the meeting did not occur.

The respondent admits that her conduct in representing Pierce and Nelson violated C.R.C.P. 241.6 and the following disciplinary rules of the Code of Professional Responsibility: DR1–102(A)(1) (violation of a disciplinary rule), DR6–101(A)(3) (neglect of a legal matter) and DR9–102(B)(4) (failure to pay funds and deliver property to a client promptly upon request). However, the respondent's professional misconduct did not result in damage to her clients. The complaint filed by Adcom was ultimately dismissed and the bankruptcy proceedings were concluded to the satisfaction of both clients.

### B

In the spring of 1984, Dr. Richard Herold and his wife entered into discussions with Rodney Anderson concerning the availability of office space in a building Anderson was constructing. When the Herolds told Anderson they were leasing other premises, he stated that he would reimburse them for any expenses they might suffer if they terminated their existing lease. Anderson also assured them that the respondent, who was his attorney, would represent them in any matters pertaining to their lease. The respondent, who at that time was also counsel to and a director of a management company controlled by Anderson, ratified Anderson's assurances. The Herolds then executed a lease with the management company.

On February 1, 1985, the Herolds moved their offices to the new building on February 1, 1985. In April 1985, a forcible entry and detainer action was filed against them by their prior lessor. The respondent assured the Herolds that she would represent them, filed an answer on their behalf and obtained an August 29, 1985, trial date. The respondent did not inform the Herolds of the trial date and did not at any time discuss with them any potential conflicts of interest that might arise during the course of her representation of them.

Relying on Anderson's representations to her that he would reimburse the Herolds for any damage they might suffer and that he would negotiate a settlement, the respondent did not prepare for trial. On August 29, 1985, although she had never discussed the matter with the Herolds, the respondent appeared in court and filed a motion to withdraw as counsel in an effort to permit Anderson to settle the case. The respondent had previously directed Anderson to inform the Herolds of her decision. He did not do so, but did obtain from Dr. Herold a written request that the respondent be permitted to withdraw. The trial court granted the respondent's motion to withdraw, based upon her representation that her clients had been properly advised. The trial court then conducted a bench trial, in the Herolds' absence, and entered judgment against them in the amount of $15,197.77 plus attorney fees and costs.

On September 30, 1985, the respondent prepared a motion for new trial and request for stay, directed Dr. Herold to execute the pleading pro se, and filed the pleading. In October 1985, the Herolds informed the respondent that their prior lessor was attempting to garnish their bank accounts. The respondent stated she would file an appeal of the judgment and that the judgment would not appear on their credit record until the appeal was concluded. The respondent did not file an appeal.

In the spring of 1986, the Herolds retained a new attorney, settled the case, and filed separate civil actions against Anderson and against the respondent. Ul-timately the respondent paid the sum of $35,000 to the Herolds and they obtained a judgment against Anderson in the sum of $30,000.

The respondent admits that her conduct violated C.R.C.P. 241.6 and the following disciplinary rules of the Code of Professional Responsibility: DR1–102(A)(1) (violation of a disciplinary rule), DR1–102(A)(5) (conduct prejudicial to the administration of justice), DR2–110(A)(2) (creation of prejudice to a client in withdrawal from employment), DR5–101(A) (acceptance of employment when interests of client and of attorney conflict), DR5–107(B) (permitting a person who refers client to direct or regulate professional judgment in rendering legal service), DR6–101(A)(2) (handling a legal matter without adequate preparation), and DR6–101(A)(3) (neglect of a legal matter). The hearing board also found that the respondent's conduct in representing the Herolds violated disciplinary rule DR5–105(B) (continuing multiple employment when interests of another client are impaired thereby).

### III

#### A

On October 2, 1986, Nancy Chew and her husband filed a civil action against Wilbur Noyes. Noyes retained the respondent to represent him. The parties settled the case, and on March 6, 1987, a stipulation of settlement was approved by the trial court. The Chews' attorney promptly forwarded a written stipulation to the respondent, but she did not return it. The respondent did send a check in the sum of $500, drawn on her trust account, to the Chews' attorney, in compliance with the terms of the stipulation. However, the check was returned twice for insufficient funds and was not replaced. The respondent paid $500 to the Chews after the request for investigation was filed in this case.

The trial court ultimately entered a judgment against Noyes. The Chews' attorney informed the respondent of the entry of judgment, directed her to correspond with him rather than with his clients, and re-

quested the execution and return of the stipulation. The respondent later wrote a letter to Mrs. Chew advising her that the earlier check had not been honored because of certain conduct of Noyes. The respondent admits that her foregoing conduct violated C.R.C.P. 241.6 and Disciplinary Rules DR1–102(A)(1) (violation of a disciplinary rule), DR1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law), and DR7–104(A)(1) (communicating with adverse party without consent of opposing counsel) of the Code of Professional Responsibility.

### B

When notified of the filing of the request for investigation herein, the respondent filed a written response thereto. However, the respondent failed to cooperate further with the Committee's investigation, in violation of C.R.C.P. 241.6(7).

### C

At an earlier point in time, the respondent had paid Mrs. Chew $2,300 for certain items of custom furniture that Mrs. Chew was unable to procure. On January 15, 1986, Mrs. Chew sent a check for that sum to the respondent. When the check was returned for insufficient funds, Mrs. Chew promptly sent the respondent a replacement check $2,300. In a written response to the Committee during its investigation of her representation of Wilbur Noyes, the respondent stated that Mrs. Chew's company had failed to return deposits made by the respondent and had failed to respond to the respondent's demand for such repayments. The respondent admits that her conduct in this matter violated C.R.C.P. 241.6 and Disciplinary Rules DR1–102(A)(1) (violation of a disciplinary rule) and DR1–102(A)(5) (engaging in conduct prejudicial to the administration of justice) of the Code of Professional Responsibility.

### IV

The record in this case reveals multiple violations of the Code of Professional Re-

sponsibility, as the respondent has acknowledged. In representing Mr. Pierce and Mr. Nelson, she deceived her clients and neglected their interests in two separate matters. In representing the Herolds, she failed to disclose material conflicts of interest and failed to exercise her independent skill and judgment to protect her clients' interests. Moreover, her misguided attempts to prolong the litigation resulted in a decision to mislead the trial court, thus interfering with the fair and efficient administration of justice and bringing disrepute to the legal profession. In her dealings with Mr. Noyes and the Chews she neglected her clients' interests, falsely accused Mrs. Chew of improper conduct and failed to respond to the Committee's investigation.

The hearing board recognized these aggravating factors, but also found several mitigating factors present, including the fact that the respondent was inexperienced and naive and was not motivated by personal gain or greed. On balance, while the respondent's multiple acts of professional misconduct might well warrant imposition of the sanction of disbarment, we conclude that the unanimous recommendations of the hearing board and the hearing panel should be adopted.

Accordingly, the respondent is hereby ordered suspended from the practice of law for a period of two years, commencing with the effective date of this opinion. *See* C.R.C.P. 241.21(a). The respondent is further ordered to pay the cost of these proceedings, in the amount of $715.56, to the Grievance Committee, 600—17th Street, Suite 500–S, Denver, Colorado 80202–5435, within sixty days of the date of this opinion. The respondent shall comply with the provisions of C.R.C.P. 241.22(c) prior to reinstatement.